Smith *v.* Smith, Appellant.

Argued December 15, 1933.

Before Trex-
ler, P. J., Keller, Cunningham, Baldrige, Stadtfeld,
Parker and James, JJ.

*William C. Alexander,* for appellant.

*E. LeRoy van Roden,* and with him *A. Stanley
Peterson,* for appellee.

Per Curiam, March 3, 1934:
This is an action of divorce. The grounds alleged
are (1) cruel and barbarous treatment endangering
the life of the libellant, and (2) indignities to the per-
son rendering her condition intolerable and life bur-
densome.

The master recommended a decree for both causes
mentioned in the libel. The court was of the opinion
that there was not sufficient proof of cruel and bar-
barous treatment endangering life, but sustained the
master's conclusion that there were indignities to the
person rendering her condition intolerable and life
burdensome. We have carefully examined the testi-
mony and have all come to the conclusion that the di-
vorce should be refused.

In support of the cruel and barbarous treatment, the wife testifies that in November, 1931, the respondent struck her, threw her on the floor and knocked her against a chest. This is the only occurrence of this nature which occurred during their entire married life. That they had a quarrel is evident. The confirmation of her story by disinterested neighbors applies only to the happening of some struggle between the parties, but does not support the degree of violence which she states was employed by the respondent, and her own conduct afterwards would lead one to the conclusion that she greatly exaggerated the results which she claims followed. His story is to the effect that she was the aggressor. The lower court rightly held that there was not sufficient to warrant a decree for cruel and barbarous conduct, endangering life.

In support of the second cause, set out in the libel, that the husband offered indignities to her person, the libellant endeavored to prove demands for very frequent intercourse which were sometimes accompanied with force, and further charges behavior on his part to which regard for decency prevents detailed reference. The husband absolutely denies her story. There is no corroboration of the wife's accusation. It is oath against oath. Her testimony is given without regard to exactness of expression and with an apparent indifference as to whether it is a correct statement of fact. For example, she testified to an outrageous course of conduct by her husband soon after the beginning of married life. Upon her recall at a subsequent hearing, apparently forgetting her former statement, she qualifies it and describes it as a growing disposition on his part to abuse his privileges as time passed. This is also true as to the charges of other misconduct on his part. The very night before the day she left him, he testified that they had intercourse and she when asked stated she did not remem-

ber. She admitted that sometimes the act was at her solicitation, but not always mutual. It is inconceivable that any wife who was subjected to the treatment that she alleges, should desire to have any continuance of the same. These admissions on her part weaken her testimony. The lower court finds corroboration of her story in the medical testimony in the case. The learned judge who wrote the opinion states:

"The respondent makes a general denial on the point of excessive or over-indulgent intercourse. This cannot prevail as verity, for the libellant's condition, as hereinbefore described, belies his words."

Let us see if this be so. After the birth of her second child, January 2, 1930, Dr. Underwood treated her a number of times, the last treatment being given on the 14th of July. The treatments were rendered necessary as a result of childbirth and consisted of the insertion of a tampon in the vaginal cavity. He testified that there was no evidence of abuse, no injury to the parts and furthermore no ovarian cyst, or fibroid growth or cancer. If there was any cancer, it was not sufficiently developed to be seen. She was nervous probably due to the relaxed condition of the organs causing a sagging of the uterus. This condition yielded to treatment to some extent. This was, as we stated, July 14, 1930.

Libellant left her husband January 26, 1931, and had intercourse with him the night before and in the morning kissed him good-bye. An examination in November, 1931, disclosed an ovarian cyst about as large as a baseball, coupled with a fibroid growth in the uterus and a little growth in the left ovary which appeared cancerous and subsequently proved to be. In January, 1932, an operation was performed and the "pelvic organs" removed. Strange to say, the doctor who performed the operation was not called as a witness. There was no testimony that the condi-

tion found was due to excessive intercourse. It was stated by the osteopathic doctor who witnessed the operation, that any intercourse would aggravate the condition and in his opinion, the woman was in pain very much of the time. The whole conclusion of the doctor was based upon the assumption that such intercourse had occurred, but there was no opinion given that it *caused* the conditions which required the operation, merely if such intercourse had taken place, it would have aggravated the conditions found.

Taking into consideration that an examination July 14, 1930, disclosed no injury, and that she left her husband on January 26, 1931, and had had intercourse with him the night before and she admits there was upon occasion intercourse at her solicitation, we cannot see how her condition when the operation was performed affords the slightest confirmation of her story. In short, the argument is that proof that a year after separation the pelvic organs were removed, coupled with the statement of the doctor that excessive intercourse, if it had occurred, would have aggravated (not caused) the conditions found, corroborated her testimony to the effect that such excessive intercourse had occurred. We cannot adopt this course of reasoning.

The testimony of the libellant standing alone is not so clear and convincing as to sustain the charge, and there being no corroboration, the divorce must be refused. A marriage should never be dissolved without clear proof of imperious reasons: Forrester v. Forrester, 77 Pa. Superior Ct. 364; Auerbach v. Auerbach, 98 Pa. Superior Ct. 369; Elverson v. Elverson, 104 Pa. Superior Ct. 90, 159 A. 48; Meinel v. Meinel, 109 Pa. Superior Ct. 143, 167 A. 379.

The decree is reversed and the record is remitted with directions to enter a decree dismissing the libel.